## LONE STAR GAS CO. v. HUTTON et ux.

### No. 3972.

Court of Civil Appeals of Texas. Texarkana.

March 25, 1931.

Rehearing Denied April 2, 1931.

Karl F. Griffith, Roy C. Coffee, and Marshall Newcomb, all of Dallas, for appellant.

A. P. Dohoney, of Paris, for appellees.

LEVY, J.

The suit was by the appellees, owners of 297 acres of land, for damages caused to the land and crops through the alleged diversion of the natural flow of the waters of certain streams. The defendant answered by general and special denial, and specially pleaded that the injury was caused by agencies and circumstances beyond its control and through no act or omission on its part and through negligence on the part of the plaintiffs. The defendant further pleaded a conveyance by the plaintiffs of the right of way and easement in the land with stipulations of liability for damages from the construction, operation, and maintenance of the pipe line.

There was trial before the court without a jury and a judgment for the plaintiffs.

The trial judge's findings of fact fully reflect the case and the evidence. His findings follow:

"The court finds that the Plaintiffs, J. R. Hutton and wife, Clara Hutton, did, on September 21, 1928, for a consideration of Forty-three and 75/100 ($43.75) Dollars, execute, grant and convey a right-of-way and easement to the Defendant, Lone Star Gas Company, for the purpose of constructing, maintaining and operating pipes lines and appurtenances thereto, including telegraph and telephone lines over and across 308 acres, more or less, out of the Thomas Askins Survey in Lamar County, Texas, and said tract of land includes the tract of land for which Plaintiffs seek to recover damages in this action.

"The court finds that the Defendant, Lone Star Gas Company, buried its pipe line to a sufficient depth so as not to interfere with the cultivation of the soil by Plaintiffs.

"The court finds that the Defendant was and is obligated pursuant to the right-of-way deed and contract to pay any damages that might arise to growing crops and fences on the land of Plaintiffs by reason of the construction, operation and maintenance of its pipe line.

"The court finds that immediately west and north of Plaintiffs' land is located Lake Paris, which contains and holds a large body of water supplying the City of Paris, Texas, and that said lake of water has a large spillway whereby the overflow water from Lake Paris flows into Pine Creek.

"I find at the time the damages sued for occurred plaintiffs owned the land referred to in the right-of-way granted to defendant September 21, 1928, and that Pine Creek is the north boundary line of said land.

"In November and December 1928, defendant constructed its pipe line across the western portion of plaintiffs' land crossing Pine Creek about sixty-seven poles east of the boundary line between plaintiffs' land and property owned by the City of Paris upon which is situated the lake referred to in defendant's requested finding of fact No. Fourteen, and extending in a southwesterly direction crossing plaintiffs' south boundary line about eighteen poles east of their southwest corner. At the point where the pipe line crosses the channel of Pine Creek said channel is near the hills on the north side, there being a narrow strip of bottom land, between the channel and the hills, covered with timber. At the point where said pipe line crosses said plaintiffs' south boundary line plaintiffs had a levee which protected their land from water flowing from the south and along the public road adjoining their land on the south. A short distance south of said point said pipe line crosses another creek which flows in a northeasterly direction across plaintiffs' land and into Pine Creek below plaintiffs' land.

"In constructing its pipe line defendant cleared a strip of land 30 feet wide across the narrow strip of bottom north of the creek above referred to and piled the fallen timber and brush along their right-of-way across said narrow bottom, and placed logs and other obstructions in the channel of the creek for the purpose of crossing same with their tractor and ditching machine. At the point where the pipe line crosses plaintiffs' south boundary line defendant cut plaintiffs' levee and left an opening therein; and in crossing the creek south of plaintiffs' land cut down the bank thereof. It was raining at the time defendant began its operations across plaintiffs' land and heavy rains fell during and immediately after the time such work was going on. By reason of the rainfall and the obstructions placed in the channel of Pine Creek and across the narrow strip of bottom north thereof said Creek was caused to overflow and water was diverted from the creek and adjacent bottom lands on the north side and caused to flow across plaintiffs' land creating currents which washed some of the soil from about 30 acres of plaintiffs' land east of and below the pipe line, filled up ditches and washed down levies below the pipe line. The creek south of plaintiffs' land overflowed and water was diverted therefrom where defendant cut down its banks and caused to flow in a northern direction through the opening made in plaintiffs' levee on their south boundary line and across plaintiffs' land west of the pipe line washing the soil on and damaging about 2.18 acres of plaintiffs' said land.

"By reason of the washing of the 30 acres of land above referred to below the pipe line and the condition in which it was left plaintiffs were unable to cultivate said 30 acres during the year 1929 and failed to raise a crop thereon in said year. At the time defendant was constructing said pipe line across plaintiffs' land plaintiffs had thereon a matured cotton crop a part of which was ungathered, and in the prosecution of said work defendant's employees knocked out and tramp-

ed down ungathered cotton to plaintiffs' damage.

"I find that as a result of the diversion of waters by defendant and causing the same to flow across plaintiffs' lands plaintiffs suffered damages as follows:

"Permanent injury to the 30 acres of land above referred to, $600.00.

"Loss of crop on said 30 acres for the year 1929, $500.00.

"Injury to the 2.18 acres of land west of the pipe line above referred to, $75.00.

"Destruction of matured cotton in the field during construction of its pipe line by defendant's employees, $40.00.

"Cost of restoring levees and ditches where pipe line crossed same, $75.00, making a total of $1,290.00.

"I find that on account of continuous rains and the water diverted by the defendant and caused to flow across plaintiffs' land, it was impossible for them to have avoided the resulting damages by any effort on their part. After the cessation of the rain and after the water had run off and the land sufficiently dried to have permitted the doing of anything in the way of removing obstructions and repairing levees, the injuries complained of had already been done and the resulting damages accrued.

"Conclusions of Law.

"From the facts found I conclude that defendant is liable to plaintiffs by reason of diversion of water and causing the same to flow across plaintiffs' lands in the resulting damages as above found in the sum of $1,290.-00, for which judgment has been rendered."

We have carefully considered all of the propositions submitted by the appellant, and conclude that reversible error does not appear in the record.

It is believed that the averments of the petition are not insufficient to show a cause of action, and it is concluded that the evidence supports the findings of fact made by the trial court.

In the light of the evidence and of the court's findings of fact, the waters of two different streams were diverted, and each diversion resulted in injury or hurt to the appellees' land. According to the findings, the diversion of the waters of Pine creek caused hurt or injury to "about thirty acres" lying east of the pipe line, and the diversion of the waters of "the Branch" or creek on the south of plaintiffs' land caused hurt or injury to "about 2.18 acres" west of the pipe line. The injury or hurt to the "30 acres" consisted of (1) washing "some of the soil"; and (2) through the 30 acres remaining too wet "to cultivate" during the season of 1929. Allowing the damages for the injury to the land and for the loss of the crop thereon in 1929 was not, in the circumstances, the equivalent of allowing double damages. The hurt to the land was not that of a total or permanent injury to the land, as is evident from the court's finding, for farming purposes. There was only partial injury to the land. Its usefulness as agricultural land was not totally destroyed, neither were the alleged obstructions of a permanent nature. The damages for the partial injury to the land were separate and distinct from the special damages of being temporarily deprived of its use for the year 1929. There was not any overlapping of damages for the same injury. International & G. N. R. Co. v. Walker (Tex. Civ. App.) 97 S. W. 1081; Gulf, C. & S. F. R. Co. v. Coffman (Tex. Civ. App.) 11 S.W.(2d) 631, 633.

The judgment is affirmed.